1        IN THE UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF ILLINOIS
2             EASTERN DIVISION

3  DANIELLE CURRY, on her own behalf and  ) Docket No. 15 C 9152
    as Special Administrator of the Estate  )
4  of CHRISTOPHER KELLY, deceased,      )
                                   )
5               Plaintiff,     )
                                   )
6           v.          ) Chicago, Illinois
    OFFICER KYLE BURNS (Star #13310),     ) September 7, 2016
7  OFFICER KELIN ALTHOFF (Star #4163),   ) 9:00 o'clock a.m.
    OFFICER CHRIS DIEBALL (Star #14889),   )
8  OFFICER MARK LACIVITA (Star #15136),   )
    OFFICER VIRGINIA O'DONNELL (Star #5695),)
9  OFFICER BRIAN RIX (Star #15065),     )
    OFFICER MICHAEL KEY (Star #8813),     )
10  SGT. ANGELO MONACO (Star #1595),     )
     OFFICER LILIAN ZEPEDA (Star #5920),    )
11  OFFICER JOYCE SHEAN (Star #10293),    )
     OFFICER GABRIELLA CRUZ (Star #2844),   )
12  OFFICER ERICK GRADY (Star #17129),    )
     OFFICER KEVIN HAWKINS (Star #13471),   )
13  OFFICER ERIC SEHNER (Star #11641),    )
     OFFICER ADAM FITZGERALD (Star #7834),  )
14  and the CITY OF CHICAGO, a municipal   )
     Corporation,                       )
15                       )
               Defendants.    )
16
         TRANSCRIPT OF PROCEEDINGS - MOTION
17       BEFORE THE HONORABLE JOHN Z. LEE

18  APPEARANCES:

19  For the Plaintiff:          ERICKSON & OPPENHEIMER, LTD., by
                            MS. RONAK P. MAISURIA
20                       223 West Jackson Boulevard
                            Suite 200
21                       Chicago, Illinois 60606

22

               ALEXANDRA ROTH, CSR, RPR
23            Official Court Reporter
             219 South Dearborn Street
24                Room 1224
             Chicago, Illinois 60604
25               (312) 408-5038

1   APPEARANCES:   (Continued)

2   For the Defendants:            CITY OF CHICAGO
                                   Department of Law, by
3                                  MS. DANA MARIE PESHA
                                   MR. BRET ANTHONY KABACINSKI
4                                  30 North LaSalle Street
                                   Suite 900
5                                  Chicago, Illinois 60602

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Proceedings had in open court:)

2        THE CLERK:  15 C 9152, Curry versus Does.

3        MS. MAISURIA:  Good morning, your Honor.  Ronak

4    Maisuria for plaintiff.

5        MS. PESHA:  Good morning.  Dana Pesha, P-e-s-h-a, on

6    behalf of defendants.

7        MR. KABACINSKI:  Good morning, your Honor.  Bret

8    Kabacinski also for the defendants.

9        THE COURT:  Good morning.

10       This is plaintiff's motion for leave to file third

11   amended complaint instanter.  Is there an objection to the

12   motion?

13       MS. PESHA:  Our concern, not to the -- not objection

14   per se, your Honor.  But there is a concern that it raises.

15   This is now the fourth complaint adding another claim.  And the

16   last time that I was in front of your Honor you had raised the

17   issue that there were 15 named officers, and if we could

18   possibly cut that down as we move through discovery.  That

19   hasn't occurred.

20       We answered.  We stated there is at least five

21   officers that have no contact with plaintiff on the date of the

22   incident.  So we asked them to be dismissed.  We still have to

23   go through depositions on those.  And as we quickly approach

24   this fact discovery cutoff, we have 20 depositions scheduled.

25   We have already taken about ten.  And there is still some

1 discovery further down the pike.

2       So I just wanted to raise this with you as we're now
3 moving on and adding additional claims.

4       MS. MAISURIA:  Your Honor, we understand it's the
5 third amended complaint.  But unfortunately we did not receive
6 information regarding spoliation issue until about mid to late
7 July.  At that time we did some research as to whether we
8 wanted to bring a spoliation claim or perhaps ask for an
9 adverse inference later down the road.  We decided to go with
10 the spoliation claim for right now.

11       I mean, this is not a claim we would have been able to
12 bring at the second amended complaint or the first amended
13 complaint.  And while there are many officers named in this
14 case, five of the 15 officers in written discovery have said
15 that they -- they weren't present.  But we would still like to
16 take their depositions because they said they weren't -- didn't
17 have contact with the decedent on the day, but they were still
18 on the scene.

19       Once we take those depositions, if their stories
20 remain consistent, we anticipate dismissing those defendants.
21 But there are going to be at this point ten officers presumably
22 defendants in this case.  And there is no getting around the
23 fact that despite a litigation hold being placed very early on,
24 dash cam footage was purged because no hold was placed on that.
25 And the hard drive wasn't properly removed, which would have

1    allowed for an expert to see whether that data could have been

2    recovered.

3            So we have some serious spoliation issues here.

4            THE COURT:  Talk to me a bit about the dash cam videos

5    and the issues that counsel has raised.

6            MS. PESHA:  So the legal hold came into the City of

7    Chicago law department, and it was assigned to a paralegal to

8    collect the information and preserve that information.  She did

9    not collect the dashboard cameras, from what I've been told,

10   because she believed it was a foot chase, and the dash cameras

11   would not have shown anything.  She did not have car numbers.

12           When we were assigned the case in December, we saw

13   that right away, raised the issue with her superiors and have

14   worked through CPD to determine what else is there, what would

15   have happened.  And we're trying to get the GPS for the car

16   that has the video that was purged to show where it was parked,

17   to show what if anything it could have possibly shown.  We have

18   asked for discipline for that individual paralegal, and it

19   was -- it went through HR, and that they are addressing it at

20   this point.

21           With respect to the second car with the in-car camera

22   with the hard drive, the tech went out to the car on the date

23   of the incident.  There were Windows errors, which meant that

24   there was nothing on the hard drive.  He did not remove it.  He

25   did a supplemental report stating that the Windows errors would

1  not have allowed them to even log in on the date of the
2  incident.

3          And then what happened was, the last video that was on
4  there was from August 13, which is about three weeks prior to
5  the date of this incident.  It was not removed.  For some
6  reason the detectives in the detective sup said that it was
7  removed.  It was not.  As soon as the law department found out
8  about this error, we contacted the technical services
9  department.  They have now removed the hard drive, and it is in
10 evidence.

11         MS. MAISURIA:  Your Honor, we had a consultant that we
12 worked with in another cases that's familiar with the dash cams
13 used by the Chicago Police Department.  COBAN is the
14 manufacturer.  And he -- when we first got this case, I reached
15 out to him.  He informed me, there is a fail-safe system on
16 there.  So even if the camera says -- if the department looks
17 into it and they think that the camera wasn't working for three
18 weeks, it still -- there is a range where someone can go in and
19 try to recover data that would appear not to be there but is
20 actually in fact there.

21         And we would anticipate using him as an expert in the
22 spoliation claim because he perhaps could have come in and seen
23 whether this data could have been recoverable.

24         THE COURT:  So let me ask you this:  Just looking down
25 the line here, thinking about summary judgment stage, okay,

1  when at this point do you think you are going to raise the

2  spoliation issue?  In other words, are you going to ask for an

3  adverse inference to use with regard to any sort of summary

4  judgment motions that defendants filed or that you decide to

5  file?  Or are you going to wait until trial?  When do you

6  foresee bringing that issue to the Court for the Court to

7  decide?

8          MS. MAISURIA:  Your Honor, unfortunately I am not in a

9  position to answer that question because I haven't taken any

10 officer depositions yet.  We have scheduled most of them.  And

11 they are all scheduled at this point for October going into

12 early November, based on counsel's scheduled.  So until more

13 discovery comes out through those depositions, I am not really

14 in a position to say whether we would bring that up at summary

15 judgment stage or later.

16         MS. PESHA:  We will be presenting, your Honor, the

17 officers who were in the vehicles on those days, as well as the

18 technician that went out to collect the data, and the sergeant

19 who's in charge of the information technology service.

20         MS. MAISURIA:  I mean, when --

21         THE COURT:  Just hold on for a second.  The -- in my

22 view, my preliminary thoughts are as follows:  It seems to me

23 that if at the end of discovery the defendants do wish to file

24 some sort of summary judgment motion, to the extent the missing

25 information is going to be relevant to the issues raised in

1  that motion, I would prefer to address that before the summary

2  judgment motions are filed as opposed to part and parcel of the

3  summary judgment motion, the basis being to the extent I am

4  going to have to have a hearing and make credibility

5  determinations, I like to do that before the parties spend a

6  lot of time and money on summary judgment motions and framing

7  issues that perhaps they may not need to frame.  So keep that

8  in mind as you go forward.

9       Perhaps one way to do that might be the -- I am just

10  thinking out loud here, might be to do the summary judgments in

11  phases, doing the spoliation claim first, before we do the

12  other claims on the merits.  But that's something to kind of

13  think about, and we'll talk about that more when it comes down

14  to it.

15       What about these other five officers?  So what's the

16  basis for initially naming them as part of this lawsuit?

17       MS. MAISURIA:  We got the names off of police reports

18  that were initially given to us when we sent out the subpoena

19  after filing a John Doe complaint.

20       THE COURT:  So the police report said that these

21  officers were on the scene?

22       MS. MAISURIA:  They said they were on the scene.  And

23  the reports that we got initially after filing the case and

24  sending out a subpoena within weeks of the incident were --

25  they weren't complete reports.  So it -- they weren't clear as

1   to which officers had done what.  We named them as defendants

2   initially thinking they were the officers involved in the

3   pursuit.  They were present.  They responded to the scene.

4   They -- some of them went into the area where the decedent was.

5           We anticipate dismissing them out after we've taken

6   their depositions and if that information continues to be

7   consistent through discovery.  But at this stage, I mean, just

8   relying on an interrogatory answer we wouldn't want to dismiss

9   them out and then re-add them if something else came out at the

10  deposition.

11          THE COURT:  I am just trying to get a sense of what

12  else is out there with regard to these officers, other than the

13  police reports.  Or if there is anything specifically tying

14  those five officers to the scene.  So what were they -- what

15  was their involvement?

16          MS. PESHA:  So there is -- essentially it's a large

17  scene, your Honor.  There is the area on Harding between

18  Ferdinand and Ohio and the street over which is I believe

19  Springfield.

20          The initial encounter with the deceased is on

21  Springfield by two officers.  Then he runs from the police

22  officers.  One of the officers pursues.  They call for

23  assistance.  There is additional officers that come onto

24  Springfield to stay at Springfield, to stay with other

25  individuals who were stopped.  They do not pursue him.  They

1    never see him, make no contact with him.  They actually stay on

2    Springfield.

3          And then additional officers respond on Harding.  The

4    ones who are on Harding, ten is the generous number of the

5    individuals who either physically had contact with him or saw

6    them, saw him interact with the officers.  The other five never

7    saw him.  They stayed on Springfield.

8          MS. MAISURIA:  Your Honor, that's according to the

9    police version.  We've had third-party witnesses deposed in

10   this case already, who have indicated that there were female

11   officers staying on Springfield as opposed to male officers the

12   defendants are claiming stayed.  None of the third-party

13   witnesses have said there was a crowd of five officers that

14   stayed at the initial scene.  They only said it was one female

15   officers.

16         So we have discrepancies in the information coming

17   out, and we would like to fully get through discovery before

18   making a determination as to which individual should no longer

19   be defendant.

20         THE COURT:  Okay.  I mean, if there is a discrepancy

21   amongst the witnesses that are deposed to date or witnesses

22   that you have interviewed that provides you with a good-faith

23   basis to believe that these others officers had further

24   involvement or other knowledge with regard to the claims or

25   defenses that are set forth, then discovery is fine.  I am

1    assuming that even if they weren't named as defendants, you'd

2    probably take their depositions anyway as third parties.  So I

3    don't think there is really much prejudice either way,

4    particularly given where we are in discovery.

5        So let's talk about discovery.  With regard to the

6    spoliation claim, does the claim require any additional

7    discovery other than what you are going to be taking?

8        MS. MAISURIA:  No.  Once I learned from Ms. Pesha what

9    had occurred, I indicated to her that I wanted to take the

10   depositions of those individuals.  I'd like to take the

11   deposition of the tech that went out, the sergeant that was

12   involved, and at this point the paralegal.  I don't think at

13   this point that we would be taking any additional depositions

14   for that claim beyond those three.

15       THE COURT:  Okay.  So let's talk about the discovery

16   deadline, currently the discovery deadline of October 6.  You

17   said that as of now, the deposition is scheduled to go out

18   through early November, is that correct?

19       MS. MAISURIA:  That's correct.  I raised the issue of

20   filing a motion, a joint motion, for an extension of discovery

21   with Ms. Pesha probably three or four weeks ago, and she

22   indicated that she was agreeable to that but wanted to explore

23   how much time would be necessary to ask for.  And we had not

24   yet agreed on a timeframe.  At this point we scheduled all the

25   defendants' depositions.  I think the last deposition date on

1   that front is November 3.  But there is probably seven to eight

2   third-party witnesses that still need to be deposed as well,

3   one of whom has proven very difficult for either side to track

4   down.  And I would consider her a crucial witness.

5         So I think we are going to need, I would say, anywhere

6   from 60 to 90 additional days.

7         MS. PESHA:  We would agree with that.

8         THE COURT:  Well, this is what I'd like you to do:  Go

9   ahead and meet and confer and provide me with a joint schedule

10   setting forth all dates for all of the depositions between now

11   through November, and the ones that need to be taken.  To the

12   extent that there is going to be this third party, you can tell

13   me why you think that person is critical and why I should leave

14   discovery open to take that particular deposition.  But I am

15   not going to leave discovery open just carte blanche to deal

16   with that one witness.  Okay?  So you can go ahead and file the

17   appropriate motion at that time.

18         So the plaintiff's motion to file third amended

19   complaint to add a spoliation claim is granted.  When can you

20   file your answer?

21         MS. PESHA:  Fourteen days, your Honor?

22         THE COURT:  That's fine.  So defendants' answer filed

23   by September 21.

24         When is our next status in this case?

25         MS. PESHA:  September 20.

1        THE COURT:  Let's move that out.  Let's go ahead, I

2   will strike that date.  Let's move it out to the week of

3   October 17.

4        THE CLERK:  October 20 at 9:00 o'clock.

5        THE COURT:  If you are going to file a motion, file it

6   and notice it up for that day.

7        MS. MAISURIA:  Thank you.

8        MS. PESHA:  Thank so much.

9        MR. KABACINSKI:  Thank you.

10     (Which were all the proceedings heard in this case.)

11                            CERTIFICATE

12        I HEREBY CERTIFY that the foregoing is a true, correct

13   and complete transcript of the proceedings had at the hearing

14   of the aforementioned cause on the day and date hereof.

15

16   /s/Alexandra Roth                          9/26/2016
     _____    _____
17   Official Court Reporter                        Date
     U.S. District Court
18   Northern District of Illinois
     Eastern Division
19

20

21

22

23

24

25